R. O. BROWNELL, RECEIVER, APPELLEE, V. T. G. ADAMS ET AL.: L. B. FULLER ET AL., APPELLANTS.

FILED MAY 29, 1931. No. 27682.

*Perry, Van Pelt & Marti, C. E. Sandall, C. J. Campbell, Stiner & Boslaugh, Edmund Nuss* and *Littrell & Patz,* for appellants.

*C. M. Skiles* and *I. D. Beynon, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DAY, J.

The receiver of the Pioneer State Bank of Omaha brings this as a suit in equity in the district court for Douglas county, for the benefit of all the unpaid creditors of the bank, to recover from the stockholders the double liability imposed upon them by the Constitution. Some of the defendant stockholders resided in Douglas county where they were served with process and others resided in various other counties of the state where they were served with summons sent from the Douglas county court. The defendants prosecuting this appeal from a judgment in favor of the receiver are those who were not served in Douglas county.

The appellants present the following general propositions for our consideration: (1) Did the court have jurisdiction over the defendants who were served in the various counties of the state with process issued out of the district court for Douglas county? (2) Were the original receivership proceedings null and void? (3) Does the evidence sustain the finding of the trial court that the defendants were stockholders of said bank?

It is the well-established rule in this state that "The remedy for the enforcement of the entire double liability imposed by the Constitution upon stockholders of a state bank in the event of insolvency is a suit in equity by a creditor for the benefit of all the creditors, or by the receiver." *Rogers v. Selleck*, 117 Neb. 569. See, also, *German Nat. Bank v. Farmers & Merchants Bank*, 54 Neb. 593; *Farmers Loan & Trust Co. v. Funk*, 49 Neb. 353; *Pickering v. Hastings*, 56 Neb. 201; *Hastings v. Barnd*, 55 Neb. 93; *Brown v. Brink*, 57 Neb. 606; *Brownell v. Anderson*, 117 Neb. 652.

Jurisdiction of equity to enforce constitutional liability of stockholders of an insolvent banking corporation is based upon the rule obtaining in this state that equity has jurisdiction of an action by a receiver against all the stockholders of a corporation jointly to enforce their contractual or statutory liability. In order to recover upon the statutory liability of stockholders of an insolvent corporation, a suit in equity should be brought, by the receiver, or by a creditor on his own behalf and for all other creditors, against all the stockholders of the corporation. *Emanuel v. Barnard*, 71 Neb. 756. In *McCall v. Bowen*, 91 Neb. 241, the court announced this rule as applicable to a suit brought by the receiver of a mutual insurance company to collect an assessment. To the same effect is the holding in *Randall v. McClain*, 94 Neb. 487. We content ourselves with a brief restatement of the rule, for a discussion of which we refer to *Rogers v. Selleck*, 117 Neb. 569, and *McCall v. Bowen*, 91 Neb. 241. Suffice it to state that

there can now be no question but that in this jurisdiction it was proper for the receiver to bring this suit in equity against the stockholders of the insolvent Pioneer State Bank in Douglas county to recover their constitutional liability.

Since this suit was rightly commenced in Douglas county against defendants who were served with process within the county, summons could be issued for other defendants in other counties. Section 20-504, Comp. St. 1929, provides: "When the action is rightly brought in any county, according to the provisions of this Code, a summons shall be issued to any other county against any one or more of the defendants at the plaintiff's request." The receiver brought this suit and requested, under the authority of this provision of the statute, that summons be issued to other counties for certain defendants. In *McCall v. Bowen,* 91 Neb. 241, which was a suit by a receiver of a mutual insurance company to recover from the stockholders an assessment made by the court to pay the liabilities of an insolvent corporation, it was held that it was properly brought in equity against all the stockholders and that a summons might be issued out of the county in which the action was brought to any other county in the state in which a defendant resided or could be summoned.

The appellants contend that the liability of a stockholder is several and not joint, and that a summons may not be issued from one county to another unless the obligation is joint. In *Rogers v. Selleck, supra,* we said: "The stockholders united in a common purpose to procure from the state a charter to conduct a commercial bank with permission to deal with the public in an enterprise affected with a public interest. It required the joint action of all the subscribers for stock to accomplish that purpose. * * * The rights of the creditors and the liabilities of the stockholders had a common source in the conditions imposed by the Constitution and in the contractual obligations assumed thereunder. Except in amount the claims of the

different creditors in the present suit in equity are alike, requiring the same proofs. The law and facts essential to defenses are also of a similar nature in some respects at least and may be the same."

Equity is invoked, not only to prevent a multiplicity of suits, but also because of the trust nature of the fund created for the benefit of creditors. There is a common liability on the part of the stockholders, contractual in its nature, which requires them to contribute to this fund for the benefit of creditors an amount equal to the amount of stock held by each individual. There is no joint liability on the part of stockholders of an insolvent corporation in the sense that, if one does not pay, another stockholder must pay for him. The limit of the liability is the amount of stock each holds. 6 Thompson, Corporations (3d ed.) sec. 4802; *Hanson v. Davison,* 73 Minn. 454; *Crease v. Babcock,* 10 Met. (Mass.) 525; *Vick v. Lane, Hazlehurst & Co.,* 56 Miss. 681; *Mitchell v. Banking Corporation of Montana,* 81 Mont. 459. We have held that where two defendants are jointly liable, summons for one may be sent to another county from the one in which the suit is instituted. *Nebraska Nat. Bank v. Parsons,* 115 Neb. 770; *First State Bank v. Ingrum,* 107 Neb. 468; *Barry v. Wachosky,* 57 Neb. 534; *Farmers & Merchants Bank v. Tate,* 96 Neb. 142; *Wiley v. National Surety Co.,* 103 Neb. 68.

In *Ayres v. West,* 86 Neb. 297, this court said: "The law is well settled that, in an action for a money judgment, a summons cannot be lawfully sent to a county other than the one wherein the litigation is pending, unless there is a joint demand against the nonresident defendant and the party summoned in the county where the suit is commenced." The appellants quote and rely on this case. The defendants sought to be joined in the *Ayres* case were the makers, and it was said in that case that the two defendants were not by virtue of their contracts subject to a joint suit. It was pointed out that the causes of action were improperly joined and the plaintiff was prosecuting two dis-

tinct and several causes of action against different defendants. This, we think, clearly distinguishes that case from the one at bar. In the case at bar the suit was properly brought in equity and joined all the stockholders whose liability was a common one though not a joint liability. To the same effect is *First Bank of Ulysses v. Warren,* 113 Neb. 361.

Where an action is rightly brought in one county against a number of defendants properly joined, and a *bona fide* defendant served in that county, a summons may be issued to other counties for service upon proper defendants.

The receivership proceedings in the case of the Pioneer State Bank of Omaha were commenced in the district court for Douglas county by the filing of a petition by the attorney general of the state of Nebraska, alleging that the bank was insolvent, that it had been taken over by the department of trade and commerce of the state of Nebraska on the 2d day of June, 1921, and other facts justifying a receivership under the laws of the state of Nebraska. Upon the same day there was filed in the office of the clerk of the district court for Douglas county an entry of appearance, confession of judgment, and consent to appointment of receiver, signed by the president, chairman of the board of directors, vice-president, and cashier of said bank. Upon the same day there was served upon the same officers of the Pioneer State Bank a notice of application for appointment of receiver, which notice was accepted by the officers of said bank. This notice provided that the hearing for the appointment of receiver of said bank was to be heard by the district court for Douglas county on June 7, 1921, at 11:30 a. m. The court thereafter, pursuant to said entry of appearance and the service and acceptance of the notice of the time of hearing on the application, appointed the receiver. The original receivership proceeding was brought under section 49, art. 16, title 5, ch. 190, Laws 1919. This is a special statute providing for the appointment of a receiver

of a banking corporation. Since this special statute does not provide for the giving of notice, the general statutes on receiverships must govern in that particular. Section 20-1081, Comp. St. 1929, which in its identical form was in force and effect at the time, provides, *inter alia*, that "A receiver may be appointed * * * Fourth. In all cases provided for by special statutes." The notice provided for is contained in section 7811, Rev. St. 1913, and was carried in its identical form as section 8755, Comp. St. 1922, which, as amended in 1927, now appears as section 20-1082, Comp. St. 1929. In the section of the special statute, there is no provision for any method for the appointment of a bank receiver. Necessarily, since that section does not provide the procedure or the notice necessary, and since section 8754, Comp. St. 1922, being the general statute, does provide for such procedure, it must apply. This is especially true, since the general section applying to receivership provides that a receiver thereunder may be appointed "in all cases provided for by special statute."

In *Holcomb v. Tierney*, 79 Neb. 660, it was held that the general provisions for the appointment of a receiver apply to the appointment of a receiver in a bank case, except in so far as the special statute above referred to makes specific provisions therefor. The receivership proceedings in this case were brought against the Pioneer State Bank, a corporation engaged in the banking business. Notice was given to the corporation. "Service of process in the main case is not any different in a case where a receiver is sought than in any other case. The statutory requirements must be complied with whether the defendant is an individual or a corporation. * * * If an appearance is made, the validity of it is determined by the general rules applicable to such appearances." 2 Tardy's Smith, Receiverships (2d ed.) p. 1964. Section 20-511, Comp. St. 1929, which in its identical form was in force and effect at the time of the receivership proceeding, is as follows: "A summons against a corporation may be served upon

the president, mayor, chairman of the board of directors or trustees, or other chief officers," etc. Section 20-516, Comp. St. 1929, provides: "An acknowledgment on the back of the summons or the voluntary appearance of a defendant is equivalent to a service."

The appearance of the corporation and service of notice in this case was sufficient to give the court jurisdiction for the appointment of a receiver. "A court has power to appoint a receiver when the parties to a suit waive the statutory notice and consent to the appointment." *Veith v. Ress*, 60 Neb. 52. "On an application for the appointment of a receiver, the five days' notice required by the statute may be waived by the parties entitled thereto." *Murphy v. Fidelity Mutual Fire Ins. Co.*, 69 Neb. 489.

The appellants cite the case of *Furrer v. Nebraska Building & Investment Co.*, 108 Neb. 698, as authority for the proposition that all stockholders must be made parties and served with notice where an action is brought to place a bank in receivership. An examination of that case indicates that it is not authority for that proposition. The proceedings in that case were brought by one of the stockholders alleging misconduct and mismanagement of the corporate business by the officers and asking for the appointment of a receiver to wind up the affairs of a solvent corporation. In that case it was said: "Where a petition for the appointment of a receiver for a corporation shows on its face that the managing officers are not properly representing stockholders, but are using corporate powers and corporate property for individual benefits, the appointment of even a temporary receiver without notice to the stockholders themselves is an abuse of discretion and erroneous; notice to the derelict officers, under such circumstances, not being sufficient." In the *Furrer* case, the stockholders went into the original receivership proceeding and objected to the appointment of a receiver. To a like effect is *Bowen v. Bowen-Romer Flour Mills Corporation*, 114 Kan. 95. See the annotations of the last two

cases cited in notes in 43 A. L. R. 242, 245, where the annotations are properly restricted to the inherent power of equity, at the instance of a stockholder, to appoint a receiver for, or to wind up, a solvent, going corporation, on the ground of fraud, mismanagement or dissension. The purpose of the action in these cases was to take away from the duly authorized officers the management and control of the corporate property. The officers and directors of the corporation had a right to the possession and control of the property as against the stockholders. In this case, at the time the receivership proceedings were commenced, the property and assets of the banking corporation were in the control and possession of the department of trade and commerce of the state of Nebraska, under authority of section 8-181, Comp. St. 1929. There is no contention that the department of trade and commerce of the state of Nebraska was wrongfully in possession of the Pioneer State Bank at the time of the application for the appointment of said receiver. In fact, it is admitted by the parties that, at the time of the appointment of the receiver, the bank was hopelessly insolvent. The contention of the appellants is based upon the fact that notice was not given to the stockholders personally, and that they are "parties to be affected thereby," as mentioned in section 20-1082, Comp. St. 1929, as necessary parties to have notice. It would seem that the notice to the corporation would be sufficient notice to the stockholders for the purpose of the appointment of a receiver. In such a case the stockholders are not entitled to the possession of the corporate property and cannot exercise any control over it because the management had been entrusted to the directors and officers. In this state, banking is a quasi-public business and subject to regulation and control of the state. Comp. St. 1929, sec. 8-114. Therefore, at the time of the application for the appointment of the receiver, this bank and its assets were in the control of the department of trade and commerce of the state of Nebraska. The stock-

holders had agreed to this provision. It was a condition precedent to their engaging in the banking business, and they had purchased their stock in this banking corporation for the purpose of engaging in the banking business. The relation of a stockholder to a corporation is a contractual one and the banking laws of the state of Nebraska became a part of their contract. The department of trade and commerce is vested with general supervision and control of state banks with authority to do all those reasonable necessities for protection of depositors therein throughout the state. Comp. St. 1929, secs. 8-101, 8-181, 8-1,102; *State v. Exchange Bank*, 114 Neb. 664. "State department of banking may close a state bank for insolvency." *State v. Citizens State Bank*, 115 Neb. 776. In the case of *Commonwealth Mutual Fire Ins. Co. v. Hayden*, 60 Neb. 636, we said. "*In Hawkins v. Glenn*, 131 U. S. 319, 329, it was held: 'The stockholder is bound by a decree of a court of equity against the corporation in enforcement of a corporate duty, although not a party as an individual, but only through representation by the company. A stockholder is so far an integral part of a corporation that, in view of the law, he is privy to the proceedings touching the body of which he is a member.' The rule thus laid down by the supreme court of the United States has been generally adopted by other courts." In the case at bar, in lieu of the service of the summons, the president, vice-president and cashier entered voluntary appearances in the cause of action. Service was had upon the officers of the corporation at the time of the hearing for the appointment of a receiver.

This question doubtless will not arise again, since section 8755, Comp. St. 1922, under which this action was brought, was amended by chapter 49, Laws 1927, to provide that service of a notice of application for a receiver might be served upon the corporation, and that the corporation, its officers, and stockholders should be bound thereby. However, we are of the opinion that, in the case

of a banking corporation, service upon the corporation bound the stockholders under the statute as it existed at the time of the commencement of this suit.

There is no question about the insolvency of the bank and no objection was made to the appointment of the receiver from the date of the appointment, June 7, 1921, until after this action was brought, December 28, 1928, a period of more than seven years. The appointment of a receiver has been attacked for the first time collaterally by the appellants in this suit to enforce stockholders' liability. "When a court of competent jurisdiction has appointed a receiver in an action where such appointment is authorized, the authority of such receiver is not open to collateral attack." *Andrews v. Steele City Bank*, 57 Neb. 173. "The order of a district court appointing a receiver is not subject to collateral attack, because such order was made in a law action, or because the petition fails to disclose all the facts usually required in a petition for that purpose." *Murphy v. Fidelity Mutual Fire Ins. Co.*, 69 Neb. 489. See, also, *Holcomb v. Tierney*, 79 Neb. 660; *In re Estate of Ramp*, 113 Neb. 3; *Gwynne v. Goldware*, 102 Neb. 260. "The regularity, propriety, and validity of the appointment of such a receiver can only be questioned in a direct proceeding to test that question." *Basting v. Ankeny*, 64 Minn. 133. "Where one has qualified as a receiver, the validity of his appointment cannot be collaterally impeached if the court had jurisdiction of the subject-matter." *Davis v. Shearer*, 62 N. W. 1050 (90 Wis. 250).

Another proposition argued by the appellants is that the evidence is not sufficient to support the finding and judgment of the court. The stock book of the Pioneer State Bank, they argue, is inadmissible as evidence to prove that they are stockholders in the corporation. The stock certificate book of the bank was received in evidence. It was identified by the president of the bank as containing the original records of those who were the original and subsequent stockholders of the bank. The president testi-

fied that these books were kept under his direction, and that he, as president, had signed every stock certificate that had been issued; that at the time these certificates were issued the stubs in the stock book were filled in to show to whom the stock had been issued, the number of shares and the date. While it is true that the entries were made by a number of different clerks who were not available as witnesses, the entries were made under the direction of the witness, who testified that at the time he signed the certificates the data written in the stubs corresponded to the certificates which he had signed.

The appellants contend that the books alone and unaided by any other evidence were not sufficient to show they were stockholders of the Pioneer State Bank. The leading case upon this question is *Turnbull v. Payson,* 95 U. S. 418. In *Farmers & Merchants Nat. Bank v. Mosher,* 68 Neb. 724, this court discussed and approved the above rule as set out in the following quotation: "The plaintiff insists that the burden of rebutting that presumption is cast upon the defendant. Several cases are cited upon this point, one being *Turnbull v. Payson,* 95 U. S. 418, from which the following quotation is made in the brief: 'Where the name of an individual appears on the stock-book of a corporation as a stockholder, the *prima facie* presumption is that he is the owner of the stock, in a case where there is nothing to rebut that presumption; and, in an action against him as a stockholder, the burden of proving that he is not a stockholder, or of rebutting that presumption, is cast upon the defendant.' This rule obtains in an action where the claimant of the stock is a party to the suit. No doubt upon a direct issue between two parties, both claiming to own the stock, the *prima facie* presumption is that the stock stands upon the company's books in the name of the real owner; but when that presumption is overcome the burden of proof would still be upon the plaintiff to show his ownership in the stock." Although this rule has been challenged and severely crit-

icised by courts and authors of text-books, it is recognized by courts and the authorities as the general rule. 14 C. J. 836, states: "The rule asserted in many cases is that the books and records of a corporation are competent, and *prima facie* evidence of who are its members or stockholders. However, the view adopted in some cases is that such books and records are not admissible against a person to show that he is a stockholder unless there is introduced other evidence showing his membership or connecting or making him privy in some way to the entries in question. Under either rule such books and records are not conclusive and they must be properly identified."

Thompson, who criticises this rule in his work on Corporations, vol. V (3d ed.) p. 680, uses the following language: "Without repeating either the substance or the cases of what has formerly been said as to books and records being evidence as to who are stockholders, it may be stated in this connection that the books and records are *prima facie* evidence of the fact that those whose names appear thereon are owners of the stock." The same author in his work on Liability of Stockholders, sec. 177, states: "The general rule is that a person whose name appears on the books of a corporation is a shareholder, both as to the corporation and as to the public. An extensive examination of the cases constantly brings us back to this idea —an idea based on the most salutary considerations; which gives meaning and value to the registry of shareholders kept by the corporation; notifying creditors of the names which stand as guarantors of the corporate ventures, and of the extent of their several liability; and notifying shareholders of the names to whom they may look for contributions to the common burden."

Morawetz, Private Corporations, p. 76, says: "While the rule * * * appears to be well established by authority, it is difficult to support it by any principle of the common law. The stock books of a corporation are undoubtedly evidence against it, as admissions; but they can-

not be admitted on this ground for the company, against a person who denies that he is a shareholder."

The rule announced in *Turnbull v. Payson, supra,* is criticised in numerous cases. *Carey v. Williams,* 79 Fed. 906, is the leading case announcing the contrary rule. See, also, *Harrison v. Remington Paper Co.,* 140 Fed. (Kan.) 385. The rule has also been criticised in *Hinsdale Savings Bank v. New Hampshire Banking Co.,* 59 Kan. 716, in the following language: "It is wholly insufficient. It is evidence *res inter alios acta,* nothing more. Entries in the books of a private corporation are made by its officers and concern nobody but the corporation and its members. If membership in a corporation is admitted, the books kept by its officers, with some exceptions, are admissible in evidence against the member, but they are not admissible to establish even *prima facie* the fact of membership, as against one protesting his lack of connection with the company. As to him such books are hearsay of the baldest kind." *Girard Trust Co. v. Loving,* 71 Kan. 559, states: "The books from which certain entries were offered in evidence were wholly unidentified as to the purpose for which they had been kept. There is nothing to indicate that the entries offered in evidence were correct, or were made at or near the time of the transactions to which they relate, if they do relate to actual transactions, or that they were original in the sense that they constituted the first permanent record of the business to which they refer."

One criticism of the rule in the texts and the cases is directed to the proposition that the books, unidentified, should be *prima facie* evidence of the ownership of stock. But the proof in this case goes far beyond that, since the books are identified by the president of the Pioneer State Bank, who signed every certificate of stock as the stock record of the bank, representing the original issuance and the subsequent transfers of stock.

Another criticism of the rule that stock books are competent evidence is that, since the relationship of a stock-

holder and the corporation is contractual, it is necessary that both the corporation and the stockholder assent to the relationship. It is conceded that the books are admissible to prove the corporation's assent; but, as evidence of the stockholder's assent, it is, in a suit against the corporation, a self-serving declaration, and, in a case between others, hearsay. In this connection we must remember that in this case we are concerned with a banking corporation, subject to the control and strict supervision of the state. Certain corporate acts are required as a condition precedent to engaging in the banking business. The state and the public have a right to know the stockholders who guarantee by their investment in stock and by their additional constitutional liability the payment of creditors, including depositors, of the bank. The stockholders united in the corporate body for the purpose of engaging in the banking business. The keeping of records, including a record of stockholders and the reports required by the state, were corporate acts which they were obliged to perform. It is the general rule that books and records of corporations, when properly kept and identified, are evidence of the acts and proceedings of the corporate body. So, in the instant case, this objection is not formidable.

In *Gruetzmacher v. Quevli*, 226 N. W. 5 (208 Ia. 537), it was held that the "exclusion of corporate stock records in a receiver's suit to enforce stockholder's liability held erroneous. In suit by receiver, * * * the exclusion of the corporate stock book and records tending to show defendant's status as stockholder on the objection that defendant was not shown to have been a stockholder or to have had knowledge concerning records or to have ever in fact received stock certificate held erroneous; the corporate records being admissible in connection with other evidence on issue of her membership in corporation." To prove appellee was a stockholder, appellant offered in evidence the stock book and the stub thereof, which is as

follows: "Certificate No. 6. For 400 shares, issued to
Anna M. Quevli, Mason City, Iowa. Dated December 22,
1921." It is identical with the stub in the instant case.
See, also, *Lebens v. Nelson,* 148 Minn. 240; *Holland v. Du-
luth Iron Mining & Development Co.,* 65 Minn. 324. It is
impossible to cite, discuss and analyze all the cases upon
the proposition, because of the great number. There is
a hopeless conflict and they cannot be reconciled. We have
cited only a few of the many to indicate the diversity of
opinion.

Our statutes seem to be controlling in this case. Sec-
tion 20-1212, Comp. St. 1929, provides that books of ac-
count are receivable in evidence under certain circum-
stances. In *Volker v. First Nat. Bank,* 26 Neb. 602, it was
said that bank books were admissible in evidence under
the provisions of the foregoing section. The stock book
of a banking corporation is competent evidence, when prop-
erly identified, of the ownership of the corporate stock.
The books in this case are so identified. The statute has
declared banking to be a quasi-public business, and as such
is subject to public control and supervision. Banking cor-
porations are required by law to keep true records. There
was offered and received in evidence a quarterly report of
the bank made while it was a going concern, just prior
to the receivership, which contained a list of all stock-
holders and the number of shares held by each, which was
sent to the banking department as required by law, and
was made up from the records of the bank. The statutes
provided criminal penalties for false records and false re-
ports. It is presumed that the officers of the bank have
obeyed the law and kept the records correctly, and made
accurate reports, although of course the evidence may be
rebutted by any competent evidence. There is no evidence
to rebut the presumption in this case that the record and
the report as to the ownership of the stock was accurate.
In making this statement, we are not unmindful that the
record contains evidence of the conviction of the presi-
dent for embezzlement. In this case, to establish the con-

stitutional stockholder's double liability; the stock book of the corporation, properly identified by the president who issued and signed all the certificates of stock and under whose direction the book was kept, and the quarterly report required by law to be made to the department of trade and commerce, are sufficient evidence to sustain a finding that one was a stockholder.

The appellant Sol Greenamyer, in addition to the assignments of error heretofore discussed, urges an assignment especially applicable to him. He was made a party to the suit as executor of the estate of Amos Greenamyer, deceased. The question he presents is whether or not, for the purpose of establishing a claim against the estate, he was the duly appointed, qualified, and acting executor and legal representative of Amos Greenamyer, deceased, at the time of service of a summons upon him, when he had been formerly discharged as executor. In this particular, the case is controlled by the rule announced in *Hazlett v. Estate of Blakely,* 70 Neb. 613, in which we said: "The trust of an administrator or executor is a continuing one, and a decree of final accounting does not destroy the relationship of such officer, but only discharges him from liability for the past." The purpose of this suit is to render a contingent claim absolute. The claim having been established as an absolute one, it is not within our province to determine in this case whether or not the claim may be collected from the estate.

One of the defendants, Henry C. Lemke, challenges the right of the plaintiff to recover for that he inherited the bank stock at a time when he was 17 years of age, and at the time the receivership proceedings were commenced he was less than 18 years of age, and did not attain his majority until over three years after the bank had failed. The relationship of a stockholder in a corporation is contractual. *Allen v. White,* 103 Neb. 256; *Enterprise Ditch Co. v. Moffitt,* 58 Neb. 642. The plaintiff in this case contends that, since the minor had retained this stock for

more than five years after he became of age, and prior to bringing this suit, and did nothing to disaffirm this contractual relationship, he is liable as a stockholder. Ordinarily, it is necessary for the infant to return or tender back any part of the consideration which he may have and disaffirm the contract. *Krbel v. Krbel,* 84 Neb. 160. The stock of the Pioneer State Bank was without value, and was known to be worthless at least from the date of the appointment of a receiver. The fact is well established by the record that it was a liability rather than an asset. The minor in this case never received any benefit from the stock and did not exercise any dominion over it in the sense that he acted as a stockholder. Being a contractual relationship, the minor could not make a binding contract which would render him liable for the stockholder's liability. He did nothing to affirm his contract. Therefore, the minor cannot be said to have retained any benefits under the contract and it was not necessary for him to make an express repudiation. The retention of the benefits of a contract made by an infant after reaching his majority is ordinarily held to be a ratification of the contract. However, the question of whether or not there has been a ratification is ordinarily a question of fact. In the case at bar, the defendant inherited this bank stock while a minor, and more than three years before his majority it was known to be worthless. He never received any benefit from this stock and his inheritance in this particular was nothing but a liability. Where an infant has received some benefit during infancy, he must repudiate the contract within a reasonable time after attaining majority. *Englebert v. Troxell,* 40 Neb. 195; *Johnson v. Storie,* 32 Neb. 610; *Krbel v. Krbel,* 84 Neb. 160. But not having received any benefit, and not having ratified the contract after his arrival at majority, he is not bound by the same. This defendant did not retain any benefit from this contractual relationship, and the fact that after reaching his majority he did not repudiate

the relationship is not sufficient to bind him. The theory of the law is that one who retains the benefits, in effect, ratifies the contract. There were no benefits in this case and the stock certificate had become three years before he attained his majority a mere scrap of paper. The plaintiff is not entitled to a recovery against this defendant, as to whom the judgment is reversed.

For the reasons herein set out, the judgment of the district court is in all things affirmed, except as to Henry Lemke, against whom the judgment is reversed and dismissed.

AFFIRMED IN PART, AND REVERSED IN PART.